UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:20-CR-48 JD |
| EARL D MILLER | |

**OPINION AND ORDER**

This order is to supplement and complete the Court's prior order resolving the majority of objections to the Presentence Investigation Report (PSR) in this matter. (DE 168.) The Court assumes the parties are familiar with the factual details of this case. The only remaining issue to be decided in this case, before sentencing, is determining how much restitution is owed to which victims of Earl Miller's fraud.

There is no longer a dispute on the amount of restitution, or the identity of victims owed restitution following a hearing on September 28, 2023. At this hearing, the parties agreed to stipulate to the amount of restitution Mr. Miller owes in total and how much to each individual victim. (*See* DE 191.) Mr. Miller, however, maintains several legal objections to the imposition of restitution. The Court will address these objections in this order and, for the reasons stated below, overrule those objections.

**A. The Amount of Restitution**

The Government's final proposed restitution amount is $2,313,873.28 to forty-five victims as outlined in a chart filed under seal with the Court. (DE 172.) This chart also provides specific restitution allocations to each of the victims based on their investments with the Five Star business enterprise throughout Mr. Miller's fraudulent scheme. These amounts are

appropriately reduced by interest paid on their investments by Five Star and their recovery on relevant investments from the bankruptcy proceeding. (*Id.*)

The Court accepts this proposed amount of restitution based on the joint stipulation of the parties that this amount is correct.[1] The Court also notes that the amount is independently corroborated by the evidentiary proffer of the Government at the September 28th hearing. The Government proffered that in support of this amount FBI forensic accountant Heather Teagarden would testify that using the records of the Five Star enterprises (Trial Exhs. 22 and 23) she traced the investments of the forty-five investors named in docket entry 172. Ms. Teagarden would have further testified that her examination showed the investors' money was not spent according to the terms they agreed to with Mr. Miller, as outlined in Private Placement Memoranda, nor often for any investment purpose. Ms. Teagarden's testimony would have also explained that she calculated the net loss to these investors by deducting interest payments made by Five Star, confirmed again by bank records, and deducting bankruptcy proceeding payments, confirmed by public bankruptcy records.[2] The Court finds this methodology would properly award restitution to the individuals directly victimized by Mr. Miller's fraud, consistent with the Court's previous determination of loss, and grant them restitution for the net amount of loss they suffered as a result of that fraud.

---

[1] The Court would note that in stipulating to this amount, Mr. Miller also expressly withdrew his objection to the inclusion of eight individuals on the list based on his belief they profited from their investments. The Government's proffer also conveyed that Special Agent Weber would have testified he contacted seven of those individuals following Mr. Miller's objection and each represented to him that they lost money from their Five Star investment commensurate with the amount listed in the chart at docket entry 172.

[2] Ms. Teagarden would have also testified she prorated bankruptcy recovery to investors who received bankruptcy payments to only reflect payments awarded for investments made during the scheme alleged in the indictment, from July 2014 to August 2015. (*See* DE 41 at 1–9.)  This was necessary because several victims had made investments with Five Star before the relevant timeframe and received bankruptcy payments for those earlier investments as well.

**B. The Objections to Imposing Restitution are Overruled**

Mr. Miller has raised three legal objections to restitution. First, Mr. Miller argues that the Double Jeopardy Clause of the Fifth Amendment prevents the Court from imposing a restitution judgment because the United States Government has previously obtained another judgment against him in a civil enforcement action by the Securities and Exchange Commission. (DE 180; *see Sec. & Exch. Comm'n v. Miller*, 3:15-CV-519 (N.D. Ind.)) Second, Mr. Miller argues that no restitution, besides the amount to the victims identified at trial, is owed because the statute of limitations has run on all other claims. (*Id.*) Third, Mr. Miller argues there is insufficient evidence of any wrongdoing by him, outside the time period discussed at trial, to justify an order of restitution. (DE 186.) At the outset the Court would note Mr. Miller's objections are perfunctory, composed of a sentence or two each, and contain no citation to legal authority.

The Court begins with Mr. Miller's Fifth Amendment argument. The Double Jeopardy Clause of the Fifth Amendment provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Clause only protects against the imposition of multiple *criminal* punishments against a defendant. *Hudson v. United States*, 522 U.S. 93, 99 (1997) (emphasis in original). Assessment of a civil penalty, to an agency such as the SEC, itself does not create a double jeopardy problem. *United States v. Van Waeyenberghe*, 481 F.3d 951, 958 (7th Cir. 2007) (collecting cases) (rejecting a challenge to criminal punishment after the defendant had been subjected to an SEC civil enforcement judgment). As the prior judgment against Mr. Miller was civil in nature, the imposition of restitution and forfeiture in this criminal case does not run afoul of the Double Jeopardy Clause. *See also United States v. Venturella*, 585 F.3d 1013, 1019–20 (7th Cir. 2009) (imposing both restitution and forfeiture in a criminal judgment does not create a double jeopardy issue).

The Court will next address Mr. Miller's statute of limitations argument. As background, the original indictment in this case was issued June 10, 2020.[3] (DE 1.) This indictment alleged a scheme to defraud from the time period from July of 2014 to August of 2015. Pursuant to Title 18 U.S.C. Section 3282, the statute of limitations for the charges in the indictment was five years. This allowed the jury to reach their verdict based on offense conduct dating back to June 10, 2015. The indictment alleged specific acts of fraud which occurred between June 2015 and August 2015 as the basis for the wire fraud and securities fraud counts. (*See, e.g.,* DE 41 at 10–12.) The Court previously rejected a motion to strike allegations from the indictment and exclude, at trial, evidence of fraud prior to June 10, 2015. (DE 40, 76.) The Court's prior rulings were based on Seventh Circuit precedent allowing the Government to introduce evidence of fraudulent acts that fall outside the statute of limitations period when they are part of a scheme and provide context to the charged offenses which are within the statute of limitations period. (*See* DE 40 at 2–3.)

When a defendant is prosecuted for a criminal wire fraud scheme, the fact that only a few wire transactions fall within the statute of limitations does not detract from the entire pattern of transactions being a scheme, nor does it mitigate the defendant's culpability for the entire scheme. *United States v. Longfellow*, 43 F.3d 318, 325 (7th Cir. 1994); *see also United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) (reaffirming restitution is for the loss caused by the entire scheme and not just the specific incidents of fraud proven at trial). The Court may require the defendant to pay the full amount of losses to the victims of the scheme, even losses which

---

[3] It is not relevant to this motion, but the operative indictment for trial was the superseding indictment issued on October 13, 2021. (DE 41.) Both indictments allege the same eight charges and include forfeiture allegations. (*Compare* DE 1 *with* DE 41.)

4

occurred outside the statute of limitations. *United States v. Robertson*, 2016 WL 193389, at *4 (N.D. Ill. Jan 15, 2016) (internal citation omitted).

Throughout this case the Government has alleged that Mr. Miller operated a scheme to defraud between July of 2014 and August of 2015, and presented evidence of such a scheme to the jury. For example, Ms. Teagarden testified at trial that between July of 2014 and January of 2016, Mr. Miller spent some 4.5 million dollars of investor money in a manner which was inconsistent with the terms of the PPMs. (*See, e.g.,* DE 148 at 29:1–9.) She testified this conclusion was based on her examination of the Five Star entities' bank records for that period. (*See id.*; Trial Exhs. 22& 23 (bank records); Trial Exh. 37 (summary chart of those bank records and findings of fraudulent expenditures by Mr. Miller).) In returning a guilty verdict, the jury found that this scheme occurred, and specific acts of that scheme took place between June 2015 and August 2015. Therefore, Mr. Miller is liable to pay restitution to the victims who were harmed during the lifetime of the scheme and not just the victims who invested after June 2015.

Mr. Miller's final argument is that there is insufficient evidence of fraud occurring before the statute of limitations to impose restitution. As noted above, evidence introduced at trial shows he was defrauding clients over the lifetime of the entire scheme alleged in the superseding indictment. This evidence included the bank records for the Five Star entities dating back to July of 2014, and analysis of those bank records by the FBI's forensic accountant Ms. Teagarden of how those records show fraudulent misuse of investor money by Mr. Miller.

Accordingly, Mr. Miller's objection to restitution is OVERRULED and the Court ORDERS that Mr. Miller pay restitution in the total amount of $2,313,873.28 to the forty-five individuals as identified and individually allocated in the Government's proposed restitution

chart.[4] (DE 172.) This order modifies paragraph 102 of the PSR to reflect the revised restitution as described above. The order of restitution will be reflected in the judgment.

SO ORDERED.

ENTERED: October 3, 2023

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[4] The Court incorporates by reference this chart into this order. The Court specifically identifies the amount owed to each individual victim as the dollar amount listed in the farthest right column labelled "Restitution." E.g. the amount of restitution owed to Victim #1, initials "K.A.", is $24,822.07.